# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>ROSSI LOTHARIO ADAMS, II,<br><br>            Defendant. | No. 18-cr-86-CJW-MAR<br><br>**ORDER** |

---

## I.    INTRODUCTION

This matter is before the Court on defendant's motion to dismiss the Indictment. (Doc. 18). The government timely resisted the motion. (Doc. 20). For the following reasons, defendant's motion is **denied**.

## II.    RELEVANT BACKGROUND

On August 21, 2018, a grand jury returned an Indictment charging defendant with conspiracy to interfere with commerce by threats and violence, in violation of 18 U.S.C. § 1951. (Doc. 2). The Indictment alleges that "defendant conspired to obtain the property of E.D., namely the Internet domain 'doitforstate.com,' with E.D.'s consent induced by the wrongful use of force, violence and fear." (*Id.*). On December 13, 2018, defendant filed the motion to dismiss. Defendant advances four separate grounds on which he asserts that the Indictment must be dismissed: (1) that the federal government lacks the authority to prosecute this case under the Commerce Clause; (2) that an Internet domain name is not "property" within the meaning of the statute; (3) that the facts as alleged constitute only the lesser crime of coercion; and (4) that the crime alleged could not be completed without further acts by other individuals. (Doc. 19). Defendant requests an oral hearing on the matter, but the Court finds that oral hearing is

unnecessary.

### III.   STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(b) authorizes pretrial motions to present "any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). "A motion is capable of pretrial determination 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity' of the motion." *United States v. Turner*, 842 F.3d 602, 604-05 (8th Cir. 2016) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). "[T]o be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed." *United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988). "The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional." *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973).

### IV.   FEDERAL AUTHORITY

Defendant mounts an as-applied constitutional challenge to Title 18, United States Code, Section 1951 (the "Hobbs Act"), arguing that the federal government lacks any authority to prosecute this case. (Doc. 19, at 4-9). Defendant asserts that the crime charged in the Indictment "can generally be considered to be a local crime," and that "[t]he impact on interstate commerce of the particular actions and acts involved are de minimis." (*Id.*, at 8). Defendant argues that, because the actions he allegedly took had a minimal impact on interstate commerce, the Commerce Clause does not empower Congress to criminalize it, and that the Tenth Amendment reserves authority over the matter to the states. (*Id.*, at 8-9).

Article I, Section 8 of the United States Constitution grants Congress the power

"[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I, § 2, cl. 8. The Supreme Court has defined the scope of this authority:

> [T]here are three categories of activity that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, . . . *i.e.,* those activities that substantially affect interstate commerce."

*Taylor v. United States*, 136 S. Ct. 2074, 2079 (2016) (omission in original) (quoting *United States v. Lopez*, 514 U.S. 549, 558-59 (1995)). Defendant's argument, that the transfer of an Internet domain name has only a minimal effect on interstate commerce, appears to address only the third category. The Court, however, finds that Congress has the power to regulate the transfer of a domain name, and consequently to criminalize obtaining one by threats and/or violence, under all three categories.

"The term 'domain name' means any alphanumeric designation which is registered . . . as part of an electronic address on the Internet." 15 U.S.C. § 1127. "The Internet is an instrumentality and channel of interstate commerce." *United States v. Havlik*, 710 F.3d 818, 824 (8th Cir. 2013). "No additional interstate nexus is required when instrumentalities or channels of interstate commerce are regulated." *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007). As a designated electronic address on the Internet, a domain name is "part of 'a system that is inexorably intertwined with interstate commerce' and thus properly within the realm of Congress's Commerce Clause power." *Id.* (quoting *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006)). Accordingly, the federal government has authority to prosecute this case under both Congress's first and second commerce powers.

Additionally, defendant's argument that this was a local crime with minimal effect

on interstate commerce takes too narrow a view of Congress's authority under the third category of Congress's interstate commerce powers. Activities "may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal." *Taylor*, 136 S. Ct. at 2079. "When Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class." *Gonzales v. Raich*, 545 U.S. 1, 18 (2005). In *Gonzales*, the Supreme Court held that Congress had the power to criminalize the manufacture, sale, and possession of marijuana, even where those activities only occurred within one state, because those activities were part of a national market. 545 U.S., at 32-33. Similarly, although the domain name in this case may have had a minimal effect on interstate commerce (a claim for which defendant cites no evidence), the aggregation of all domain names and their sale and transfer is a national and international market. Thus, it is within Congress's power to regulate such activities. Accordingly, defendant's motion to dismiss on this ground is **denied**.

## V. DEFINITION OF "PROPERTY"

The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Defendant asserts that the Indictment must be dismissed because "an Internet domain name is not transferrable property under the Hobbs Act." (Doc. 19, at 12). Defendant argues that "registering a domain name provides a party with the temporary right to use a particular Internet address; in essence, it is a license. The registrant does not obtain property when she completes a domain registration . . . ." (*Id.*, at 11).

"'Property' is a word of very broad meaning and when used without qualification, may reasonably be construed to include obligations, rights and other intangibles, as well as physical things." *Beeghly v. Wilson*, 152 F. Supp. 726, 730 (N.D. Iowa 1957)

(quoting *Citizens State Bank of Barstow, Tex. v. Vidal*, 114 F.2d 380, 382 (10th Cir. 1940)). The Supreme Court has said, with respect to the Hobbs Act:

> Obtaining property requires not only the deprivation but also the acquisition of property. That is, it requires that the victim part with his property, and that the extortionist gain possession of it. The property extorted must therefore be *transferable*—that is, capable of passing from one person to another.

*Sekhar v. United States*, 570 U.S. 729, 732 (2013) (citations and quotations omitted). Defendant cites two cases that he asserts demonstrate that an Internet domain name does not fit this definition: *Cleveland v. United States*, 531 U.S. 12 (2000) and *United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015). (Doc. 19, at 7-8). The Court finds that, not only are both cases factually distinguishable, but the reasoning in both cases also demonstrates why a domain name is "property" for purposes of the Hobbs Act.

In *Cleveland*, the Supreme Court held that a license from the state of Louisiana to operate a video poker machine was not "property" for purposes of the mail fraud statute because the license was not "property" while in the hands of the state. 531 U.S. at 20-27. Defendant argues that, because a domain name registration is not permanent and must be renewed each year, it is more akin to a license, as in *Cleveland*, than property. (Doc. 19, at 11). In *Blagojevich*, the Seventh Circuit Court of Appeals held that the then-governor of Illinois's proposal to appoint a certain individual to an open Senate seat in exchange for a job in the Cabinet was not extortion because a public job could be "held" or "occupied" but not "obtained" as property. 794 F.3d at 736. Defendant argues that "a domain name is not owned by a registrant, in the same sense that a political officeholder does not own her position." (Doc. 19, at 11).

In *Cleveland*, however, the Supreme Court found that the license was not property *before* it was issued by the state because the state's interest in such licenses was regulatory, not proprietary. *Cleveland*, 531 U.S. at 20-24. The agency issuing the

licenses was therefore not parting with something of value to it, but rather using the state's regulatory authority to control who could conduct gambling operations. *Id.* at 20-21. Additionally, such licenses were not transferrable, but rather only valid for the person licensed. *Id.* at 15. Thus, the state was not deprived of property when someone obtained a license by deceit. *Id.* at 26-27. By contrast, a private individual who transfers a domain name registration to another under threat of violence has been extorted out of his personal property.

Similarly, in *Blagojevich*, the Seventh Circuit held that:

> [A] job in the Cabinet (or any other public job) is not "property" from the employer's perspective. It is not owned by the person with appointing power, and it cannot be deeded over. The position may be *filled* by different people, but the position itself is not a transferrable property interest.

794 F.3d at 736. By contrast, the registration of a domain name grants the holder an exclusive, transferable right to use a particular Internet address. Thus, the registration is property for the person who holds it. The fact that the registration expires is of no moment; a patent expires, but while it exists it is the property of the patent holder. *See Hartford-Empire Co. v. United States*, 323 U.S. 386, 388 (1945) ("That a patent is property, protected against appropriation both by individuals and by government, has long been settled."). The Court finds no merit to defendant's claim that a domain name is not property. Accordingly, defendant's motion to dismiss on this ground is **denied**.

## VI.   *COERCION*

Defendant asserts that that the acts alleged in the Indictment "do not constitute extortion but constitute at best coercion." (Doc. 19, at 12). Defendant distinguishes between extortion as involving "the criminal acquisition of . . . property" and coercion involving "the use of threats 'to compel another person to do or abstain from doing an act which such other person has the legal right to do or abstain from doing.'" (*Id.*

(omission in original) (quoting *Sekhar*, 570 U.S. at 735)). Defendant goes on to argue that coercion is not criminalized by the Hobbs Act, but offers no further argument as to why the alleged conduct was merely coercion and not extortion. (*Id*. at 12-13). Given that the only distinction defendant draws between extortion and coercion is that the former involves the taking of property and the latter does not, the Court finds that this is essentially a reiteration of defendant's argument that a domain name is not property. Accordingly, defendant's motion to dismiss on this ground is **denied** for the reasons the Court denied his prior argument.

## VII.   FURTHER ACTIONS

Defendant argues that "[t]he Indictment further fails because the internet domain name was not subject to transfer on the date and time of the offense that is subject to this indictment. There was further action needed to be obtained, that is the approval of GoDaddy to the transfer of this domain name." (Doc. 19, at 13). Defendant offers two documents detailing GoDaddy's procedures for the transfer of domain names. (Docs. 19-1, 19-2). Defendant goes on to argue that "[t]here was no showing of any events occurring after the initial events of June 21, 2017, and in fact the domain name itself was never in fact transferred. The Defendant could not obtain the domain name on June 21, 2017." Defendant cites no legal authority that would support dismissal on the grounds asserted.

Defendant's argument appears to be based on a misapprehension of the charge in the Indictment. Defendant is charged with *conspiring* to commit a Hobbs Act extortion "[i]n about June 2017." (Doc. 2 (emphasis added)). Defendant is not charged with having committed an overt act on June 21, 2017, but rather with having committed the inchoate offense of conspiracy around that month. To the extent defendant's argument is based on a perceived disparity between the date charged and the actual incident, the argument is without merit. Moreover, even if such a disparity existed, it would not

warrant dismissal of the Indictment. "Time is not a material element of a criminal offense unless made so by the statute creating the offense." *United States v. Stuckey*, 220 F.3d 976, 982 (8th Cir. 2000). Title 18, United States Code, Section 1951 creates no such element.

To the extent defendant's argument alleges that the Indictment does not charge a completed crime, defendant's argument is also misplaced. "To obtain a conviction for conspiracy, the government must prove beyond a reasonable doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." *United States v. Adams*, 401 F.3d 886, 893 (8th Cir. 2005) (quoting *United States v. Cabrera*, 116 F.3d 1243, 1244 (8th Cir. 1997)). Thus, the crime alleged would have been completed upon defendant's agreement to participate in the conspiracy, not upon the actual transfer of the domain name.

To the extent defendant's argument alleges that the crime charged was factually impossible to commit, his argument is similarly misplaced. "Not only is it unnecessary for each member of a conspiracy to agree to commit each element of the substantive offense, but also a conspirator may be convicted 'even though he was incapable of committing the substantive offense' himself." *Ocasio v. United States*, 136 S. Ct. 1423, 1430 (2016) (quoting *Salinas v. United States*, 522 U.S. 52, 64 (1997)). "[F]actual impossibility is not a defense to the charge of conspiracy." *United States v. Joiner*, 418 F.3d 863, 869 (8th Cir. 2005). Defendant would have committed the crime charged upon entry into the conspiracy, regardless of whether that conspiracy could ever have succeeded. In sum, the Court find that GoDaddy's internal procedures for transferring domain names have no bearing on the crime charged and provide no basis to dismiss the Indictment. Accordingly, defendant's motion to dismiss on this ground is **denied**.

### VIII.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (Doc. 18) is **denied**.

**IT IS SO ORDERED** this 10th day of January, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa